RSS/USAO2009R00629

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA          :
                                  : Criminal No. 10- $510$ $(JBS)$
        v.                        :
                                  : 18 U.S.C. §§ 982(a)(1),
KINARD J. HENSON                  : 1343, 1349, 1512 (a)(1)
                                  : (A) and (B) and (a)(3)
                                  : (B)(i), 1956(h), 1957 & 2
                                  :
                                  : I N D I C T M E N T

        The Grand Jury in and for the District of New Jersey,

sitting in Camden, charges:

## COUNT 1

### (Conspiracy To Commit Wire Fraud)

**The Defendant and Co-conspirators**

        1.    At all times relevant to this Indictment:

        (a)   Defendant KINARD J. HENSON was a resident of

Mobile, Alabama.

        (b) N.T., who is named as a co-conspirator but not as a

defendant herein, resided in New Jersey, owned Oxford Funding

Group, a sole proprietorship located in Totowa, New Jersey, and

held himself out to be a provider of real estate investors.

        (c) T.R., who is named as a co-conspirator but not as a

defendant herein, resided in East Orange, New Jersey, owned EZ Go

Financial Corporation located in Edison, New Jersey, and held

himself out to be a provider of real estate investors.

        (d) Darryl Henry, who is named as a co-conspirator but

not as a defendant herein, resided in Somerset, New Jersey, owned the limited liability companies New Horizon Realty Group and Elite Auto Spa located in Somerset County, New Jersey, and held himself out to be a provider of real estate investors.

## Other Entities and Individuals

2.    At all times relevant to this Indictment:

(a) The Dunes Condominium was a real estate development which consisted of 12 condominium units located at 401 East Stockton Road, Wildwood Crest, New Jersey, 08260 (the "Dunes Condominium").

(b) The Erin Shores Condominium was a real estate development which consisted of 48 condominium units with addresses located in North Wildwood, New Jersey.

(c) BNC Mortgage, Inc. ("BNC Mortgage") was a financial lending institution located in Irvine, California.

(d) National City Bank was a financial lending institution located in Miamisburg, Ohio.

(e) ABN AMRO Mortgage Group, Inc. ("ABN AMRO Mortgage Group") was a financial lending institution located in Troy, Michigan.

(f) Coast Mortgage Corporation was a financial lending institution located in Smithville, New Jersey.

(g) The Title Company of New Jersey ("TCNJ") was a title

2

company at which real estate transactions took place and had an office in Wildwood, New Jersey.

(h) Group 21 Title Agency ("Group 21") was a title company at which real estate transactions took place and had an office in Marlton, New Jersey.

(i) Mortgage Now, Inc. ("Mortgage Now") was a mortgage company which processed mortgage loan applications.

(j) N.F. was a resident of New Jersey and employee of Mortgage Now.

(k) L.B. was a resident of Mobile, Alabama.

(l) R.H. was a resident of Irvington, New Jersey.


**Mortgage Lending Generally**

3.   Mortgage loans were loans funded by banks and other financial institutions ("Lenders") to enable purchasers to finance the purchase of real estate.  To apply for a mortgage loan, purchasers/borrowers typically filled out several forms, including a form called the Uniform Residential Loan Application. Lenders evaluated and relied upon the financial representations contained in the Uniform Residential Loan Application pertaining to the purchaser/borrower's income, credit eligibility, and down payment requirements, as well as other documents, in deciding whether to loan a particular purchaser/borrower money for a mortgage.  In addition, Lenders also assessed the value of the

3

real estate that would secure the mortgage loan by reviewing and relying on property appraisals and other documents.

4.    After locating an available property of interest, a purchaser/borrower typically applied for a mortgage loan through a mortgage Lender or a mortgage originator.  Generally, mortgage brokers were third parties who acted as intermediaries between purchasers/borrowers and a pool of potential Lenders, one of which was selected based on the purchaser/borrower's financing needs and ability to repay the loan.  Mortgage brokers were generally responsible for collecting documents from the purchaser/borrower in support of the mortgage loan, including the loan application.  Additionally, the mortgage broker interviewed the proposed purchaser/borrower and obtained all pertinent data including the borrower's name, date of birth, social security number, home address, monthly base employment income, employer, assets, and liabilities.  Frequently, the mortgage broker made the initial loan to the purchaser/borrower and then sold it to a Lender after a short period of time, usually between one to thirty days after making the loan.  Other times, the mortgage broker simply obtained and verified all of the relevant information for the Lender, including information on the Uniform Residential Loan Application, and the Lender made the mortgage directly to the borrower.  A mortgage originator also assisted a purchaser/borrower to complete a mortgage transaction.  Unlike a

4

mortgage broker, a mortgage originator distributed its own money to fund the mortgage.

5.     Real estate appraisers were responsible for determining the fair market value of real estate properties. Fair market value was defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, in which the buyer and seller act prudently and knowledgeably, assuming the price is not affected by undue stimulus.

6.     Frequently, the mortgage loan was closed at a title company or an attorney's office.  If a loan closed at a title company, the title company's escrow officers were responsible for depositing monetary instruments and funds provided by the purchaser/borrower (including down payments) and mortgage funds from the Lender (which were typically obtained by wire transfer) or on its behalf to the title company's escrow account, and, when authorized by the parties to the transaction and the Lender, for disbursing the funds from the escrow account to various individuals and entities as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement).  The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage fund loans, to the proper entities and/or individuals according to the original loan application.

5

7. After the loan application was approved, the mortgage Lender caused funds to be transmitted (typically by wire transfer) to a settlement agent, such as a title company or a closing attorney. The title companies and/or closing attorneys then distributed the funds according to the HUD-1 Settlement Statements, generally with a large portion of the funds being distributed to the seller of the property. After funding the mortgages, the mortgage Lenders either serviced the loans during the mortgage period or sold them in the secondary market.

**The Conspiracy**

8. From in or about May 2007 through in or about July 2007, at Wildwood, in Cape May County, in the District of New Jersey, and elsewhere, defendant

KINARD J. HENSON

did knowingly and intentionally conspire and agree with N.T., T.R., Darryl Henry, and others to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice is set forth below in substance and in part, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United

6

States Code, Section 1343.

**Object Of The Conspiracy**

9.    It was the object of the conspiracy, which caused more than one million dollars of losses to various Lenders, to profit from the sale of the Properties at inflated prices by obtaining mortgage loans for unqualified borrowers using fraudulent loan applications, HUD-1 Settlement Statements, and other documents.

**Manner And Means Of The Conspiracy**

10.    It was part of the conspiracy that the conspirators arranged to sell real estate properties (the "Properties") to "straw purchasers" (the "Straw Purchasers") whom the conspirators knew had good credit scores, but lacked the financial resources to qualify for mortgage loans to purchase the Properties.   Defendant KINARD J. HENSON recruited L.B. to serve as a Straw Purchaser.

11.    It was further part of the conspiracy that the Straw Purchasers, including L.B., agreed that in exchange for purchasing the Properties in their names, the Straw Purchasers:

a.    would neither pay deposits nor closing costs to acquire the Properties; and/or

b.    would receive an up-front payment after the

7

closing for allowing their names and credit information to be used in connection with the transaction.

12.   It was further part of the conspiracy that the conspirators, including defendant KINARD J. HENSON, falsified loan applications by providing false information concerning the employment, income, and assets of the Straw Purchasers, including L.B.   Many of the falsified mortgage loan applications were prepared and submitted through Mortgage Now, including falsified mortgage loan applications for L.B.

13.   It was further part of the conspiracy that the conspirators, including defendant KINARD J. HENSON, submitted and caused to be submitted to the Lenders false and fraudulent mortgage loan applications to induce the Lenders to make the loans to the Straw Purchasers, including L.B.

14.   It was further part of the conspiracy that the conspirators, including defendant KINARD J. HENSON, caused fraudulent documents to be prepared concerning the Properties, including HUD-1 Settlement Statements that were supposed to accurately reflect the amounts of money due from the Straw Purchasers and to be paid to the sellers to close the sales of the Properties.

15.   It was further part of the conspiracy that prior to and during the closings, N.T., T.R., Darryl Henry, defendant KINARD J. HENSON, and others caused the HUD-1 Settlement

8

Statements, settlement disbursement sheets, and other documents to be manipulated, to show that the Straw Purchasers, including L.B., brought their own funds to the closing when, in fact, the Straw Purchasers did not.

16. It was further part of the conspiracy that the conspirators, including N.T., T.R., Darryl Henry and defendant KINARD J. HENSON, took proceeds from the fraudulent mortgage loans by having funds wired into various accounts that they controlled or having checks issued from those proceeds and depositing those checks into various accounts that they controlled. The recruiters of the Straw Purchasers, such as Darryl Henry and defendant KINARD J. HENSON, shared in the funds with other co-conspirators, such as N.T. and T.R.

## Unit 145 of the Erin Shores Condominium

17. It was further part of the conspiracy that in or about May 2007, defendant KINARD J. HENSON agreed with Darryl Henry to use L.B. to purchase Unit 145 of the Erin Shores Condominium for $299,900.

18. It was further part of the conspiracy that on or about June 7, 2007, Darryl Henry and defendant KINARD J. HENSON caused a Uniform Residential Loan Application to be submitted in L.B.'s name knowing that false information was contained thereon and knowing that this document would be submitted to the lender,

9

including:

        a.    falsely stating that L.B. was employed by Cromwell & Company, located at 201 Hillside Avenue, Hillside, New Jersey, 07205 for the past six years;

        b.    falsely stating that L.B. was making $14,019.00 in monthly income from Cromwell & Company;

        c.    falsely stating that L.B. had $67,838.97 in a Wachovia Bank account; and

        d.    falsely stating that the property for which L.B. sought the loan would be his primary residence.

        19.   It was further part of the conspiracy that on or about June 7, 2007, Darryl Henry and defendant KINARD J. HENSON caused $43,000 to be wire transferred from a bank account controlled by R.H. to TCNJ which represented monies for L.B.'s cash due at settlement for the sale of Unit 145 of the Erin Shores Condominium.

        20.   It was further part of the conspiracy that on or about June 7, 2007, Darryl Henry and defendant KINARD J. HENSON caused L.B. to sign a HUD-1 Settlement Statement which falsely stated that L.B. was providing $42,822.87 in funds to TCNJ as funds to be applied for purchasing Unit 145 of the Erin Shores Condominium.

        21.   It was further part of the conspiracy that on or about June 7, 2007, Darryl Henry, defendant KINARD J. HENSON, and

others caused Coast Mortgage Corporation to wire transfer $269,910.00 to TCNJ representing the net proceeds of L.B.'s mortgage for Unit 145 of the Erin Shores Condominium.

22. It was further part of the conspiracy that on or about June 7, 2007, Darryl Henry and defendant KINARD J. HENSON caused TCNJ to wire transfer $80,000.00 into an account controlled by Darryl Henry in the name of New Horizon Realty Group located at Commerce Bank.

23. It was further part of the conspiracy that on or about June 8, 2007, Darryl Henry caused $43,000 to be wire transferred from his New Horizon Realty Group Commerce Bank account to R.H.'s Pinnacle Federal Credit Union bank account, returning the monies for L.B.'s cash due at settlement for the sale of Unit 145 of the Erin Shores Condominium.

24. It was further part of the conspiracy that on or about June 8, 2007, Darryl Henry issued two checks numbered 1812 and 1813 payable to defendant KINARD J. HENSON in the amounts of $4,700.00 and $4,000.00, respectively, from Darryl Henry's New Horizon Realty Group Commerce Bank account representing defendant KINARD J. HENSON's payment for recruiting L.B. to purchase Unit 145 of the Erin Shores Condominium. Defendant KINARD J. HENSON obtained these funds by cashing Check number 1812 at Commerce Bank and depositing a portion of these funds from Check number 1813 into an account controlled by defendant KINARD J. HENSON

11

located at the Coastal Waters Federal Credit Union.

## Unit 302 of the Dunes Condominium

25.  It was further part of the conspiracy that in or about May 2007, defendant KINARD J. HENSON agreed with Darryl Henry and others to use L.B. to purchase Unit 302 of the Dunes Condominium for $599,000.

26.  It was further part of the conspiracy that on or about June 21, 2007, Darryl Henry and defendant KINARD J. HENSON caused two Uniform Residential Loan Applications to be submitted in L.B.'s name knowing that false information was contained thereon and knowing that these documents would be submitted to the lender, including:

a.  falsely stating that L.B. was employed by Cromwell & Company, located at 201 Hillside Avenue, Hillside, New Jersey, 07205 for the past six years;

b.  falsely stating that L.B. was making $14,083.33 in monthly income from Cromwell & Company;

c.  falsely stating that L.B. had $70,941.00 in a Wachovia Bank account; and

d.  falsely stating that the property for which L.B. sought the loans would be his primary residence.

27.  It was further part of the conspiracy that on or about June 21, 2007, N.T. caused $79,241.00 to be wire

transferred from a Chase Bank account controlled by N.T. in the name of Oxford Funding Group to a Commerce Bank account in the name of New Horizon Realty Group which was controlled by Darryl Henry which represented monies for L.B.'s cash due at settlement for the sale of Unit 302 of the Dunes Condominium.

28.  It was further part of the conspiracy that on or about June 21, 2007, Darryl Henry withdrew $79,241.00 from a Commerce Bank account controlled by him in the name of New Horizon Realty Group and used these funds to purchase a Commerce Bank check payable to Group 21 in the amount of $79,241.00 with the remitter's name listed as L.B.

29.  It was further part of the conspiracy that on or about June 21, 2007, Darryl Henry and defendant KINARD J. HENSON caused a Commerce Bank check in the amount of $79,241.00 to be presented to Group 21 which falsely represented L.B.'s cash due at settlement and deposit money for the sale of Unit 302 of the Dunes Condominium.

30.  It was further part of the conspiracy that on or about June 21, 2007, defendant KINARD J. HENSON caused L.B. to sign a HUD-1 Settlement Statement which falsely stated that L.B. was providing $74,241.00 in funds to Group 21 as funds to be applied for purchasing Unit 302 of the Dunes Condominium.

31.  It was further part of the conspiracy that on or about June 21, 2007, defendant KINARD J. HENSON and others caused

National City Bank to wire transfer $421,341.70 to Group 21 representing the net proceeds of L.B.'s first mortgage for Unit 302 of the Dunes Condominium.

32.  It was further part of the conspiracy that on or about June 21, 2007, defendant KINARD J. HENSON and others caused National City Bank to wire transfer $121,498.88 to Group 21 representing the net proceeds of L.B.'s secondary mortgage for Unit 302 of the Dunes Condominium.

33.  It was further part of the conspiracy that on or about June 21, 2007, N.T. caused Group 21 to issue check number 188275 payable to Oxford Funding Group in the amount of $168,143.00 which N.T. caused to be deposited into his Oxford Funding Group Chase Bank account on or about June 22, 2007.

34.  It was further part of the conspiracy that on or about June 22, 2007, N.T. caused $62,428.28 to be wire transferred from his Oxford Funding Group Chase Bank account to Darryl Henry's New Horizon Realty Group Commerce Bank account, which included Darryl Henry's and defendant KINARD J. HENSON's payment for recruiting L.B. to purchase Unit 302 of the Dunes Condominium.

35.  It was further part of the conspiracy that on or about June 22, 2007, Darryl Henry issued two checks numbered 1822 and 1823 payable to defendant KINARD J. HENSON in the amounts of $5,650.00 and $5,000.00, respectively, from Darryl Henry's New

14

Horizon Realty Group Commerce Bank account representing defendant KINARD J. HENSON's payment for recruiting L.B. to purchase Unit 302 of the Dunes Condominium. A portion of these funds was deposited into an account controlled by defendant KINARD J. HENSON located at the Coastal Waters Federal Credit Union.

## Unit 202 of the Dunes Condominium

36. It was further part of the conspiracy that in or about June 2007, defendant KINARD J. HENSON agreed with Darryl Henry and others to use L.B. to purchase Unit 202 of the Erin Shores Condominium for $599,000.00.

37. It was further part of the conspiracy that on or about June 29, 2007, Darryl Henry and defendant KINARD J. HENSON caused two Uniform Residential Loan Applications to be submitted in L.B.'s name knowing that false information was contained thereon and knowing that these documents would be submitted to the lender, including:

a. falsely stating that L.B. was employed by Cromwell & Company, located at 201 Hillside Avenue, Hillside, New Jersey, 07205 for the past seventeen years;

b. falsely stating that L.B. was making $14,083.33 in monthly income from Cromwell & Company;

c. falsely stating that L.B. had $67,390.00 in a Wachovia Bank account; and

15

d.      falsely stating that the property for which
L.B. sought the loans would be his primary residence.

38.   It was further part of the conspiracy that on or
about June 30, 2007, Darryl Henry and defendant KINARD J. HENSON
caused L.B. to sign a HUD-1 Settlement Statement which falsely
stated that L.B. was providing $75,257.98 in funds to Group 21 as
funds to be applied for purchasing Unit 202 of the Dunes
Condominium.

39.   It was further part of the conspiracy that on or
about July 2, 2007, N.T. caused $75,257.98 to be wire transferred
from a bank account controlled by N.T. in the name of Oxford
Funding Group located at Washington Mutual Bank to a Commerce
Bank account in the name of New Horizon Realty Group which was
controlled by Darryl Henry which represented monies for L.B.'s
cash due at settlement for the sale of Unit 202 of the Dunes
Condominium.

40.   It was further part of the conspiracy that on or
about July 2, 2007, Darryl Henry withdrew $75,257.98 via check
number 1845 from a Commerce Bank account controlled by him in the
name of New Horizon Realty Group and used these funds to purchase
a Commerce Bank check payable to Group 21 in the amount of
$75,257.98 with the remitter's name listed as L.B.

41.   It was further part of the conspiracy that on or
about July 2, 2007, Darryl Henry and defendant KINARD J. HENSON

16

caused a Commerce Bank check in the amount of $75,257.98 to be presented to Group 21 which falsely represented L.B.'s cash due at settlement for the sale of Unit 202 of the Dunes Condominium.

42.  It was further part of the conspiracy that on or about July 2, 2007, Darryl Henry, defendant KINARD J. HENSON, and others caused ABN AMRO Mortgage Group to wire transfer $429,461.93 to Group 21 representing the net proceeds of L.B.'s first mortgage for Unit 202 of the Dunes Condominium.

43.  It was further part of the conspiracy that on or about July 2, 2007, Darryl Henry, defendant KINARD J. HENSON, and others caused ABN AMRO Mortgage Group to wire transfer $124,522.47 to Group 21 representing the net proceeds of L.B.'s secondary mortgage for Unit 202 of the Dunes Condominium.

44.  It was further part of the conspiracy that on or about June 30, 2007, N.T. caused Group 21 to issue check number 190106 payable to Oxford Funding Group in the amount of $168,143.00 which N.T. caused to be deposited into his Oxford Funding Group Bank of America bank account on or about July 3, 2007.

45.  It was further part of the conspiracy that on or about July 2, 2007, N.T. issued check number 1052 in the amount of $62,442.51 from his Oxford Funding Group Chase Bank account payable to New Horizon Realty Group, which included Darryl Henry's and defendant KINARD J. HENSON's payment for recruiting

17

L.B. to purchase Unit 202 of the Dunes Condominium.  This check was deposited into Darryl Henry's New Horizon Realty Group Commerce Bank account on or about July 3, 2007.

46.  It was further part of the conspiracy that on or about July 2, 2007, Darryl Henry issued two checks numbered 1839 and 1840 payable to defendant KINARD J. HENSON in the amounts of $6,000.00 and $5,200.00, respectively, from Darryl Henry's New Horizon Realty Group Commerce Bank account representing defendant KINARD J. HENSON's  payment for recruiting L.B. to purchase Unit 202 of the Dunes Condominium.  A portion of these funds was deposited into a account controlled by defendant KINARD J. HENSON located at the Coastal Waters Federal Credit Union.

## Unit 127 of the Erin Shores Condominium

47.  It was further part of the conspiracy that in or about July 2007, defendant KINARD J. HENSON agreed with Darryl Henry to use L.B. to purchase Unit 127 of the Erin Shores Condominium for $319,900.00.

48.  It was further part of the conspiracy that on or about July 19, 2007, Darryl Henry and defendant KINARD J. HENSON caused a Uniform Residential Loan Application to be submitted in L.B.'s name knowing that false information was contained thereon and knowing that this document would be submitted to the lender, including:

18

a.     falsely stating that L.B. was employed by Cromwell & Company, located at 201 Hillside Avenue, Hillside, New Jersey, 07205 for the past six years;

b.     falsely stating that L.B. was making $14,000.00 in monthly income from Cromwell & Company;

c.     falsely stating that L.B. had $70,941.67 in a Wachovia Bank account; and

d.     falsely stating that the property for which L.B. sought the loan would be his primary residence.

49.    It was further part of the conspiracy that on or about July 19, 2007, Darryl Henry and defendant KINARD J. HENSON caused $48,200.00 to be wire transferred from a New Horizon Realty Commerce Bank account controlled by Darryl Henry to TCNJ which represented monies for L.B.'s cash due at settlement for the sale of Unit 127 of the Erin Shores Condominium.

50.    It was further part of the conspiracy that on or about July 19, 2007, Darryl Henry and defendant KINARD J. HENSON caused L.B. to sign a HUD-1 Settlement Statement which falsely stated that L.B. was providing $45,656.98 in funds to TCNJ as funds to be applied for purchasing Unit 127 of the Erin Shores Condominium.

51.    It was further part of the conspiracy that on or about July 20, 2007, Darryl Henry, defendant KINARD J. HENSON, and others caused BNC Mortgage to wire transfer $288,828.93 to

19

TCNJ representing the net proceeds of L.B.'s mortgage for Unit 127 of the Erin Shores Condominium.

52.   It was further part of the conspiracy that on or about July 23, 2007, Darryl Henry and defendant KINARD J. HENSON caused TCNJ to wire transfer $2,543.02 into an account controlled by Darryl Henry in the name of New Horizon Realty Group located at Commerce Bank which represented the amount of L.B.'s funds due at settlement which were overpaid.

53.   It was further part of the conspiracy that on or about July 24, 2007, Darryl Henry and defendant KINARD J. HENSON caused $96,478.60 to be wire transferred from an Erin Shores Development bank account located at Sturdy Savings Bank which represented funds due to Darryl Henry and defendant KINARD J. HENSON for finding a buyer to purchase Unit 127 of the Erin Shores Condominium.

54.   It was further part of the conspiracy that on or about July 25, 2007, Darryl Henry issued check number 1859 payable to defendant KINARD J. HENSON in the amount of $7,000.00 from Darryl Henry's New Horizon Realty Group Commerce Bank account representing defendant KINARD J. HENSON's payment for recruiting L.B. to purchase Unit 127 of the Erin Shores Condominium.   These funds were deposited into a account controlled by defendant KINARD J. HENSON located at Wachovia Bank.

In violation of Title 18, United States Code, Section 1349.

### COUNTS 2 - 7

### (Wire Fraud)

1.    Paragraphs 1 through 7 and 9 through 54 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about the dates listed below, at Wildwood, in Cape May County, and Marlton, in Burlington County, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendant

KINARD J. HENSON

did knowingly, and with fraudulent intent, transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, namely the specified electronic wire transfers originating in the specified States of the specified approximate amounts of money to TCNJ and Group 21 in New Jersey in connection with mortgage loans for the specified properties, for the purpose of executing such scheme and artifice:

| Count | Date | Amount | Property | From | To |
|-------|------|--------|----------|------|-----|
| 2 | 6/7/07 | $269,910.00 | Unit 145 Erin Shores Condo. | New York | New Jersey |

| 3 | 6/21/07 | $421,341.70 | Unit 302 Dunes Cond. | Indiana | New Jersey |
|---|---------|-------------|----------------------|---------|------------|
| 4 | 6/21/07 | $121,498.88 | Unit 302 Dunes Condo. | Ohio | New Jersey |
| 5 | 7/2/07 | $429,461.93 | Unit 202 Dunes Condo. | Michigan | New Jersey |
| 6 | 7/2/07 | $124,522.47 | Unit 202 Dunes Condo. | Michigan | New Jersey |
| 7 | 7/20/07 | $288,828.93 | Unit 127 Erin Shores Condo, | Delaware | New Jersey |

In violation of Title 18, United States Code, Section
1343 and Title 18, United States Code, Section 2.

## COUNT 8

### (Conspiracy To Commit Money Laundering)

1.     Paragraphs 1 through 7 and 9 through 54 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.     From in or about June 2007 through in or about July 2007, at Hillside, in Union County, in the District of New Jersey and elsewhere, defendant

KINARD J. HENSON

did knowingly conspire with N.T., T.R., Darryl Henry, and others to engage in monetary transactions, namely, deposits, withdrawals, transfers and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, conspiracy to commit wire fraud and wire fraud, contrary to Title 18, United States Code, Section 1957.

3.     As part of the conspiracy, defendant KINARD J. HENSON and his co-conspirators caused more than one million dollars in fraudulent mortgage loans to be funded in 2007 to enable unqualified Straw Purchasers, including L.B., to purchase the Properties.  Once the funds for these mortgages were deposited into TCNJ and Group 21's escrow accounts, defendant KINARD J. HENSON and his co-conspirators extracted proceeds from

24

the fraud through wire transfers and checks to N.T. and Darryl Henry, and Darryl Henry, in turn, transmitted a portion of those proceeds to defendant KINARD J. HENSON.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS 9 - 10

### (Money Laundering)

1.    Paragraphs 1 through 7 and 9 through 54 of Count 1 and paragraph 3 of Count 8 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about the dates listed below, at Hillside, in Union County, in the District of New Jersey, and elsewhere, the defendant

KINARD J. HENSON

did knowingly engage and attempt to engage in monetary transactions, namely, deposits, withdrawals, transfers, and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, conspiracy to commit wire fraud and wire fraud:

| Count | Date | Amount | Source |
|-------|------|--------|--------|
| 9 | 6/22/07 | $10,650.00 | Withdrawal from Darryl Henry's New Horizon Realty Group Commerce Bank account |
| 10 | 7/2/07 | $11,200.00 | Withdrawal from Darryl Henry's New Horizon Realty Group Commerce Bank account |

In violation of Title 18, United States Code, Section 1957 and Title 18, United States Code, Section 2.

26

## COUNT 11

### (Attempted Murder Of A Witness)

1.    Paragraphs 1 though 7 and 9 through 54 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    From in or about April 25, 2008 through in or about July 30, 2008, Federal law enforcement agents conducted an investigation into the sale of the Properties where mortgage loans were obtained for unqualified buyers using fraudulent loan applications, HUD-1 Settlement Statements, and other documents.

3.    On or about July 30, 2008, Federal law enforcement agents in connection with the investigation served a grand jury subpoena on Mortgage Now, Inc. ("Mortgage Now") which sought, among other things, documents in connection with L.B.'s purchases of real estate properties.

4.    That same day, shortly after the subpoena had been served on Mortgage Now, N.F., an employee of Mortgage Now, discussed the subpoena with Darryl Henry.

5.    Darryl Henry then contacted defendant KINARD J. HENSON in Alabama and informed HENSON about the subpoena.

6.    On or about July 31, 2008, defendant KINARD J. HENSON contacted R.S. and indicated that HENSON needed L.B. killed.

7.    On or about July 31, 2008, defendant KINARD J.

27

HENSON contacted L.B. and asked L.B. to help HENSON with some work.

8.   On or about July 31, 2008, defendant KINARD J. HENSON, L.B., and R.S. traveled to a wooded area in Mobile, Alabama where defendant KINARD J. HENSON provided R.S. a firearm and instructed R.S. to shoot L.B.

9.   On or about July 31, 2008, R.S. shot L.B. multiple times with defendant KINARD J. HENSON's firearm at HENSON's instruction.

10.   From on or about July 30, 2008 through on or about July 31, 2008, in the county of Ocean, in the District of New Jersey, and elsewhere, defendant

KINARD J. HENSON

did knowingly and intentionally aid, abet, counsel, and induce R.S. to kill another person, namely, L.B., with malice aforethought and with intent to prevent the attendance and testimony of L.B. in an official proceeding and prevent the production of a record, document, and other object in an official proceeding, which attempted killing is an attempt to commit murder as defined in Title 18, United States Code, Section 1113, in that such attempted killing was done unlawfully, willfully, deliberately, maliciously, and with premeditation.

In violation of Title 18, United States Code, Sections

28

1512(a)(1)(A) and (B) and (a)(3)(B)(i), and Title 18, United States Code, Section 2.

## CRIMINAL FORFEITURE ALLEGATION

1.    The United States hereby gives notice to defendant KINARD J. HENSON that, upon his conviction of the offenses in violation of Title 18, United States Code, Sections 1956(h) and 1957 charged in Counts 8, 9, and 10 of this Indictment, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property, real and personal, involved in those offenses, and all property traceable thereto, including but not limited to a sum of money equal to at least approximately $21,850.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses, for which the defendant is jointly and severally liable.

2.    If any of the above-described forfeitable property, as a result of any act or omission of defendant KINARD J. HENSON:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property

which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant KINARD J. HENSON up to the value of the forfeitable property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
PAUL J. FISHMAN
UNITED STATES ATTORNEY

31

CASE NUMBERS:   2009R00629

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

KINARD J. HENSON

# INDICTMENT FOR

Title 18, United States Code,
Sections 982(a), 1343, 1349,
1512(a)(1)(A) and (B) and (a)(3)(B)(i), 1956(h), 1957, and 2

A True Bill.

_____
Foreperson

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

R. STEPHEN STIGALL
*ASSISTANT U.S. ATTORNEY*
*(856) 757-5026*

USA-48AD 8
(Ed. 1/97)