UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

    v.

TIMOTHY D. RICKS,
KINARD J. HENSON,
WILLIE W. RICHARDSON,
ORLANDO ALLEN,
SEAN A. SOUELS,
NANCY E. WOLF-FELS,
DEBORAH L. HANSON,
SETH A. FUSCELLARO,
ANGELA L. CELLI,
LARRY L. FULLENWIDER,
 a/k/a "Stanley Hyde," and
DWAYNE K. ONQUE

: Criminal No. 10-510 (JBS)
:
: 18 U.S.C. §§ 982(a)(1)
: and (2), 1349,
: 1512(a)(1)(A) and (B)
: and (a)(3)(B)(i), &
: 1956(h)
:
: S U P E R S E D I N G
:
: I N D I C T M E N T
:
:
:

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges:

## COUNT 1

### (Conspiracy To Commit Wire Fraud)

**The Defendants and Co-conspirators**

1.   At all times relevant to this Indictment:

(a) Defendant TIMOTHY D. RICKS was a resident of New Jersey, owned EZ Go Financial Corporation located in Edison, New Jersey, and held himself out to be a provider of real estate investors.

(b) N.T., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, owned Oxford Funding Group, a sole proprietorship located in Totowa, New Jersey, and

held himself out to be a provider of real estate investors.

(c) Darryl Henry, who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, owned the limited liability companies New Horizon Realty Group and Elite Auto Spa located in Somerset County, New Jersey, and held himself out to be a provider of real estate investors.

(d) Jerry Smith, who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and held himself out to be a provider or real estate investors.

(e) Defendant KINARD J. HENSON was a resident of Mobile, Alabama, and held himself out to be a provider of real estate investors.

(f) Defendant WILLIE W. RICHARDSON was a resident of New Jersey, owned Investors Solutions, LLC located in Bloomfield, New Jersey, and held himself out to be a provider of real estate investors.

(g) Defendant ORLANDO ALLEN was a resident of New Jersey, and held himself out to be a provider of real estate investors.

(h) Defendant SEAN A. SOUELS was a resident of New Jersey, was a Bishop at Rebirth International Pentecostal Ministries, Inc. located in Elizabeth, New Jersey, and held himself out to be a provider of real estate investors.

(i) Defendant NANCY E. WOLF-FELS was a resident of New

2

Jersey, and was employed as a mortgage broker by Mortgage Now, Inc. ("Mortgage Now") located in Forked River, New Jersey.

(j) Defendant DEBORAH L. HANSON was a resident of New Jersey, and was employed as a mortgage broker by Acre Mortgage located in Marlton, New Jersey.

(k) R.O., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was employed as a loan officer by MJS Lending, Inc. ("MJS Lending") located in Hasbrouck Heights, New Jersey.

(l) Defendant SETH A. FUSCELLARO was a resident of New Jersey, and was employed as a licensed attorney by the law firm of Stagliano & DeWeese located in Wildwood, New Jersey.

(m) B.V., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was a developer of real estate.

(n) Defendant ANGELA L. CELLI was a resident of New Jersey, and was employed as a licensed realtor by Century 21 Alliance located in North Wildwood, New Jersey.

(o) Elizabeth A. Hidalgo, who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(p) Defendant LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," was a resident of New Jersey.

(q) Defendant DWAYNE K. ONQUE was a resident of New Jersey.

3

(r) M.O., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was employed as a Title Officer by Tri-State Title Agency, Inc. ("Tri-State Title Agency") located in Montclair, New Jersey.

## Other Individuals And Entities

2.   At all times relevant to this Indictment:

(a) The Bahama Breezes Condominium was a real estate development which consisted of multiple condominium units located at 400 East Orchid Road, Wildwood Crest, New Jersey 08260.

(b)   The Dunes Condominium was a real estate development which consisted of multiple condominium units located at 401 East Stockton Road, Wildwood Crest, New Jersey 08260.

(c)   The Erin Shores Condominium was a real estate development which consisted of multiple condominium units with addresses located in North Wildwood, New Jersey.

(d)   The Surf Avenue Condominium was a real estate development which consisted of multiple condominium units located at 2100 Surf Avenue, North Wildwood, New Jersey 08260.

(e) Waterways Joint Venture IV was a partnership which comprised a town home project located in Naples, Florida.

(f) ABN AMRO Mortgage Group, Inc. ("ABN AMRO Mortgage Group"), was engaged in the business of making mortgage loans and had offices located in Troy, Michigan.

4

(g) BNC Mortgage, Inc. ("BNC Mortgage") was engaged in the business of making mortgage loans and had offices located in Irvine, California.

(h) Challenge Financial Investors Corporation ("Challenge Financial Investors") was engaged in the business of making mortgage loans and had offices located in St. Petersburg, Florida.

(i) Coast Mortgage Corporation ("Coast Mortgage") was engaged in the business of making mortgage loans and had offices located in Smithville, New Jersey.

(j) Countrywide Home Loans, Inc. ("Countrywide") was engaged in the business of making mortgage loans and had offices located in Calabassas, California with branch offices located in Toms River, New Jersey and Easton, Pennsylvania.

(k) Equifirst Corporation ("Equifirst") was engaged in the business of making mortgage loans and had offices located in Charlotte, North Carolina.

(l) Gateway Funding Diversified Mortgage Services, L.P. ("Gateway Funding") was engaged in the business of making mortgage loans and had offices located in Horsham, Pennsylvania.

(m) MJS Lending was engaged in the business of making mortgage loans and had offices in Hasbrouck Heights, New Jersey.

(n) Mortgage Now was engaged in the business of making mortgage loans and acted as a mortgage broker with offices located in Brooklyn Heights, Ohio and Forked River, New Jersey.

(o) National City Mortgage Co. ("National City Mortgage"), a subsidiary of National City Bank of Indiana, which was insured by the Federal Deposit Insurance Corporation (FDIC), was engaged in the business of making mortgage loans and had offices located in Miamisburg, Ohio.

(p)  New Jersey Lenders Corp. ("New Jersey Lenders") was engaged in the business of making mortgage loans and had offices located in Little Falls, New Jersey.

(q) SLM Financial Corp., d/b/a Sally Mae Mortgage ("SLM Financial"), was engaged in the business of making mortgage loans and had offices located in Mt. Laurel, New Jersey.

(r) Washington Mutual Bank was engaged in the business of making mortgage loans and had offices in Itasca, Illinois.

(s) Global Title Company was a title company at which real estate transactions took place and had offices in Bonita Springs, Florida.

(t) Group 21 Title Agency was a title company at which real estate transactions took place and had offices in Marlton, New Jersey.

(u)  Shore Title Agency was a title company at which real estate transactions took place and had offices in North Wildwood, New Jersey.

(v)  The Title Company of Jersey ("TCJ") was a title company at which real estate transactions took place and had offices in Wildwood, New Jersey.

(w)  Tri-State Title Agency was a title company at which real estate transactions took place and had offices in Montclair, New Jersey.

(x)  J.H. was the developer of the Erin Shores Condominium and Surf Avenue Condominium, and was a resident of Cape May, New Jersey.

(y)  J.T. was the developer of the Dunes Condominium, and was a resident of the State of Pennsylvania.

(z)  R.A. was a resident of Puerto Rico.

(aa)  R.A. Jr. was a resident of New Jersey.

(bb)  L.B. was a resident of Mobile, Alabama.

(cc)  R.D. was a resident of New Jersey.

(dd)  K.L. was a resident of New Jersey.

(ee)  K.P. was a resident of New Jersey.


**Mortgage Lending Generally**

3.  Mortgage loans were loans funded by banks and

7

other financial institutions ("Lenders") to enable purchasers to finance the purchase of real estate. To apply for a mortgage loan, purchasers/borrowers typically filled out several forms, including a form called the Uniform Residential Loan Application. Lenders evaluated and relied upon the financial representations contained in the Uniform Residential Loan Application and other documents pertaining to the purchaser/borrower's income, assets, credit eligibility, and down payment requirements in deciding whether to loan a particular purchaser/borrower money for a mortgage. Lenders also evaluated and relied upon the representations in connection with the loan application pertaining to the purchaser/borrower's employment, and how the purchaser/borrower intended to use the property as a primary residence, secondary residence, or investment property. In addition, Lenders also assessed the value of the real estate that would secure the mortgage loan by reviewing and relying on property appraisals and other documents.

4. After locating an available property of interest, a purchaser/borrower typically applied for a mortgage loan through a mortgage Lender or a mortgage originator. Generally, mortgage brokers were third parties who acted as intermediaries between a purchaser/borrower and a pool of potential Lenders, one of which was selected based on the purchaser/borrower's financing needs and ability to repay the loan. Mortgage brokers were

generally responsible for collecting documents from the purchaser/borrower in support of the mortgage loan, including the loan application. Additionally, the mortgage broker interviewed the proposed purchaser/borrower and obtained all pertinent data including the borrower's name, date of birth, social security number, home address, monthly base employment income, employer, assets, and liabilities. Frequently, the mortgage broker made the initial loan to the purchaser/borrower and then sold it to a Lender after a short period of time, usually within thirty days after making the loan. Other times, the mortgage broker simply obtained and verified all of the relevant information for the Lender, including information on the Uniform Residential Loan Application, and the Lender made the mortgage directly to the borrower. A mortgage originator also assisted a purchaser/borrower to complete a mortgage transaction. Unlike a mortgage broker, a mortgage originator distributed its own money to fund the mortgage.

5. Real estate appraisers were responsible for determining the fair market value of real estate properties. Fair market value was defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, in which the buyer and seller act prudently and knowledgeably, assuming the price is not affected by undue stimulus.

9

6.    Frequently, the mortgage loan was closed at a title company or an attorney's office.  If a loan closed at a title company, the title company's escrow officers were responsible for depositing monetary instruments and funds provided by the purchaser/borrower (including down payments) and mortgage funds from the Lender (which were typically obtained by wire transfer) or on its behalf to the title company's escrow account, and, when authorized by the parties to the transaction and the Lender, for disbursing the funds from the escrow account to various individuals and entities as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement).  The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage fund loans, to the proper entities and/or individuals according to the original loan application.

7.    After the loan application was approved, the mortgage Lender caused funds to be transmitted (typically by wire transfer) to a settlement agent, such as a title company or a closing attorney.  The title companies and/or closing attorneys then distributed the funds according to the HUD-1 Settlement Statements, generally with a large portion of the funds being distributed to the seller of the property.  After funding the mortgages, the mortgage Lenders either serviced the loans during the mortgage period or sold them in the secondary market.

10

**The Conspiracy**

8.    From in or about October 2006 through on or about November 7, 2008, at Wildwood and North Wildwood, in Cape May County, and Marlton, in Burlington County, and Montclair, in Essex County in the District of New Jersey, and elsewhere, defendants

> TIMOTHY D. RICKS,
> KINARD J. HENSON,
> WILLIE W. RICHARDSON,
> ORLANDO ALLEN,
> SEAN A. SOUELS,
> NANCY E. WOLF-FELS,
> DEBORAH L. HANSON,
> SETH A. FUSCELLARO,
> ANGELA L. CELLI,
> LARRY L. FULLENWIDER,
> a/k/a "Stanley Hyde," and
> DWAYNE K. ONQUE

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice is set forth below in substance and in part, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

11

## Object Of The Conspiracy

9. The object of the conspiracy, which caused approximately fifteen (15) million dollars in funds to be released from various lenders, most often in the form of a wire, was to profit from the sale of oceanfront condominiums overbuilt by financially distressed developers in Wildwood Crest and North Wildwood, New Jersey, other properties identified as being financially distressed, and properties in New Jersey and Florida by obtaining mortgage loans for unqualified borrowers using fraudulent loan applications, HUD-1 Settlement Statements, and other documents.

## Manner And Means Of The Conspiracy

10. It was part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry located financially distressed properties in New Jersey including oceanfront condominiums overbuilt by financially distressed developers, such as J.H. and J.T. in Wildwood Crest and North Wildwood, New Jersey, to purchase, and located other properties in New Jersey built by developers, such as B.V., to purchase.

11. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirator N.T. located financially distressed properties located in Naples, Florida to purchase.

12. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirator N.T., on behalf of the purchasers, negotiated a buyout price acceptable to the owners of the developments in Wildwood Crest and North Wildwood, New Jersey, including negotiations with defendants SETH A. FUSCELLARO and ANGELA L. CELLI, on behalf of one of the sellers/owners of one of the real estate developments.

13. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirator N.T. negotiated a buyout price acceptable to the sellers of the other properties in New Jersey.

14. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirator N.T. negotiated a fee they would receive for their marketing efforts in providing buyers for the properties located in Naples, Florida.

15. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry agreed on elevated sales prices for the financially distressed properties in Wildwood Crest and North Wildwood which were much higher than the developer's buyout price so that there would be a large amount of proceeds from the sales of the properties after the closings took place.

16. It was further part of the conspiracy that defendant TIMOTHY D. RICKS and co-conspirator N.T. agreed on

elevated sales prices for other properties in New Jersey which were much higher than the sellers' sales price so that there would be a large amount of proceeds from the sales of the properties after the closings took place.

17. It was further part of the conspiracy that defendants TIMOTHY D. RICKS, KINARD J. HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, and SEAN A. SOUELS, and co-conspirators Darryl Henry and Jerry Smith and others, recruited "straw purchasers," (the "Straw Purchasers") to purchase properties located in North Wildwood, Wildwood Crest, and other locations in New Jersey and Naples, Florida. The Straw Purchasers included, among others, defendants LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," and DWAYNE K. ONQUE, and R.A., R.A. JR., L.B., R.D., K.L., and K.P., whom the conspirators knew had good credit scores, but lacked the financial resources to qualify for mortgage loans.

18. It was further part of the conspiracy that defendants TIMOTHY D. RICKS, KINARD J. HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, and SEAN A. SOUELS, and co-conspirators Darryl Henry and Jerry Smith and others informed the Straw Purchasers, including defendants LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," and DWAYNE K. ONQUE, and R.A., R.A. JR., L.B., R.D., K.L., and K.P., and the Straw Purchasers agreed, that

14

in exchange for purchasing the properties in their names, the Straw Purchasers:

      a.    would neither pay deposits nor closing costs to acquire the properties;

      b.    would receive an up-front payment after the closing for allowing their names and credit information to be used in connection with the transaction; and/or

      c.    would not have to make mortgage payments.

    19.  It was further part of the conspiracy that co-conspirator Darryl Henry paid co-conspirator Elizabeth A. Hidalgo to create false documents such as W-2s, pay stubs, bank statements, retirement account statements and cancelled rent checks to make the Straw Purchasers appear more creditworthy than the Straw Purchasers actually were in order to induce the Lenders to make the loans to the Straw Purchasers.

    20.  It was further part of the conspiracy that the conspirators also used other false documents to make the Straw Purchasers appear more creditworthy than the Straw Purchasers actually were in order to induce the Lenders to make the loans to the Straw Purchasers.

    21.  It was further part of the conspiracy that the conspirators used the false documents, including those created by co-conspirator Elizabeth A. Hidalgo, to obtain mortgage loans for the Straw Purchasers through fraudulent loan applications by

providing false information concerning the employment, income, and assets of the Straw Purchasers and the Straw Purchasers' intended use of the properties.

22. It was further part of the conspiracy that defendants TIMOTHY D. RICKS and ANGELA L. CELLI, co-conspirator Darryl Henry, and others submitted false documents, including those created by co-conspirator Elizabeth A. Hidalgo, to mortgage brokers, including defendants NANCY E. WOLF-FELS and DEBORAH L. HANSON, and co-conspirator R.O. to obtain mortgage loans for the Straw Purchasers through fraudulent loan applications by providing false information concerning the employment, income, and assets of the Straw Purchasers and the Straw Purchasers' intended use of the properties.

23. It was further part of the conspiracy that the conspirators caused fraudulent documents to be prepared concerning the properties, including HUD-1 Settlement Statements that were supposed to accurately reflect the amounts of money due from the Straw Purchasers and to be paid to the sellers to close the sales of the properties.

24. It was further part of the conspiracy that prior to and during the closings, the conspirators caused the HUD-1 Settlement Statements, settlement disbursement sheets, and other documents to be manipulated, to show that the Straw Purchasers brought their own funds to the closing when, in fact, the Straw

Purchasers did not, including, for example, co-conspirator M.O. preparing false HUD-1 settlement statements which purported to show that she had collected the necessary funds from the Straw Purchasers when in fact M.O. had not.

25. It was further part of the conspiracy that defendants TIMOTHY D. RICKS and ORLANDO ALLEN, and co-conspirators N.T. and Darryl Henry caused funds to be wired directly to title companies such as Shore Title, Title Company of Jersey, Group 21 Title Agency, and Global Title Company which purported to represent funds due at settlement on behalf of the Straw Purchasers.

26. It was further part of the conspiracy that co-conspirator N.T. caused funds to be wired to accounts controlled by defendant TIMOTHY D. RICKS and co-conspirator Darryl Henry which were used to acquire certified checks to be delivered to title companies on behalf of the Straw Purchasers.

27. It was further part of the conspiracy that the conspirators, including defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry, took proceeds from the fraudulent mortgage loans by having funds wired or checks deposited into various accounts that they controlled. The Straw Purchasers, including defendants LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," and DWAYNE K. ONQUE, and R.A., R.A. JR., R.D., and K.P., were paid a portion of the funds, and the recruiters of

17

the Straw Purchasers, including defendants KINARD J. HENSON, WILLIE W. RICHARDSON and ORLANDO ALLEN and co-conspirator Jerry Smith, shared the remainder of the funds with other co-conspirators, such as defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry.

## Furthering The Conspiracy

28.   In furtherance of the conspiracy and to effect its objects, its members committed and caused to be committed numerous transactions involving the properties, including those on or about the following dates involving the following approximate amounts:

### a.   The Bahama Breezes Condominiums

| Wire Date | Property | Lender | Mortgage Funds Released |
|-----------|----------|--------|--------------------------|
| 06/27/07 | 400 E. Orchid Road, Unit 203, Wildwood Crest, New Jersey, 08260 | Challenge Financial Investors | $412,477.20 |
| 06/27/07 | 400 E. Orchid Road, Unit 203, Wildwood Crest, New Jersey, 08260 | National City Bank | $124,362.00 |

18

## b. The Dunes Condominium

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 05/03/07 | 401 E. Stockton Road, Unit 303, Wildwood Crest, New Jersey 08260 | Countrywide | $472,370.87 |
| 05/03/07 | 401 E. Stockton Road, Unit 303, Wildwood Crest, New Jersey 08260 | Countrywide | $59,900.00 |
| 05/16/07 | 401 E. Stockton Road, Unit 301, Wildwood Crest, New Jersey 08260 | Equifirst | $576,719.44 |
| 05/24/07 | 401 E. Stockton Road, Unit 201, Wildwood Crest, New Jersey 08260 | Gateway Funding | $476,046.88 |
| 05/24/07 | 401 E. Stockton Road, Unit 201, Wildwood Crest, New Jersey 08260 | Gateway Funding | $60,221.24 |
| 06/14/07 | 401 E. Stockton Road, Unit 102, Wildwood Crest, New Jersey 08260 | Washington Mutual Bank | $485,452.55 |
| 06/21/07 | 401 E. Stockton Road, Unit 302, Wildwood Crest, New Jersey 08260 | National City Mortgage | $421,341.70 |
| 06/21/07 | 401 E. Stockton Road, Unit 302, Wildwood Crest, New Jersey 08260 | National City Mortgage | $121,498.88 |
| 07/02/07 | 401 E. Stockton Road, Unit 202, Wildwood Crest, New Jersey 08260 | ABN Amro Mortgage Group | $429,461.93 |

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 07/02/07 | 401 E. Stockton Road, Unit 202, Wildwood Crest, New Jersey 08260 | ABN Amro Mortgage Group | $124,522.47 |
| 07/31/07 | 401 East Stockton Road, Unit 203, Wildwood Crest, New Jersey 08260 | Gateway Funding | $411,901.19 |
| 07/31/07 | 401 East Stockton Road, Unit 203, Wildwood Crest, New Jersey 08260 | Gateway Funding | $66,355.07 |

c.   Erin Shores Condominiums

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 02/08/07 | 222 E. 25th Street, Unit 140, North Wildwood, New Jersey 08260 | SLM Financial | $258,376.54 |
| 02/08/07 | 220 25th Street, Unit 159, North Wildwood, New Jersey 08260 | SLM Financial | **$266,891.42** |
| 06/07/07 | 222 E. 25th Street, Unit 145, North Wildwood, New Jersey 08260 | Coast Mortgage | $269,910.00 |
| 07/20/07 | 2500 Atlantic Avenue, Unit 127, North Wildwood, New Jersey 08260 | BNC Mortgage | $288,828.93 |

d.   Surf Avenue Condominiums

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 01/29/07 | 2100 Surf Avenue, Unit 1, North Wildwood, New Jersey 08260 | Countrywide | $411,735.34 |
| 01/29/07 | 2100 Surf Avenue, Unit 1, North Wildwood, New Jersey 08260 | Countrywide | $105,000.00 |
| 01/29/07 | 2100 Surf Avenue, Unit 5, North Wildwood, New Jersey 08260 | Countrywide | $359,395.92 |
| 01/29/07 | 2100 Surf Avenue, Unit 5, North Wildwood, New Jersey 08260 | Countrywide | $69,000.00 |
| 03/30/07 | 2100 Surf Avenue, Unit 4, North Wildwood, New Jersey 08260 | New Jersey Lenders | $380,000.00 |
| 03/30/07 | 2100 Surf Avenue, Unit 4, North Wildwood, New Jersey 08260 | New Jersey Lenders | $47,500.00 |

e.   Naples, Florida Properties

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 02/04/08 | 15461 Summit Place, Circle, Unit 295, Naples, Florida 34120 | Mortgage Now | $357,210.00 |

21

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 03/11/08 | 15465 Summit Place Circle, Unit 296, Naples, Florida 34120 | Mortgage Now | $357,136.92 |
| 04/25/08 | 15591 Summit Place Circle, Unit 313, Naples, Florida 34120 | MJS Lending | $323,920.00 |
| 04/29/08 | 15418 Summit Place Circle, Unit 134, Naples, Florida 34120 | Mortgage Now | $362,610.00 |

### f.   Other New Jersey Properties

| Wire Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 10/20/06 | 52 Starr Court, Middletown, New Jersey 07716 | Countrywide | $79,000.00 |
| 10/23/06 | 52 Starr Court, Middletown, New Jersey 07716 | Countrywide | $627,232.09 |
| 05/16/08 | 106 S. 7th Street, Newark, New Jersey 07107 | MJS Lending | $291,124.53 |

29.   These transactions generally followed the same pattern:

a.   Defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry located a real estate property to purchase.

22

b.     Defendants ANGELA L. CELLI and SETH A.
FUSCELLARO helped conceal the true sales price of certain
properties through inflated sales contracts and sale and finder
fee agreements.

c.     Defendants TIMOTHY D. RICKS, KINARD J.
HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, and SEAN SOUELS
recruited Straw Purchasers, such as defendants LARRY L.
FULLENWIDER, a/k/a "Stanley Hyde," and DWAYNE K. ONQUE, and R.A.,
R.A. JR., L.B., R.D., K.L., and K.P., to purchase the property.

d.     Defendant TIMOTHY D. RICKS and co-conspirator
Darryl Henry supplied information to mortgage brokers, including
defendants NANCY E. WOLF-FELS and DEBORAH L. HANSON, and co-
conspirator R.O., which these mortgage brokers knew was false, to
prepare the Straw Purchasers' false loan application, by
attributing to the Straw Purchaser inflated incomes, false bank
account balances, fake sales contract deposits, and fictitious
assets. RICKS, Henry, and others also sometimes falsely
indicated that the properties would be owner-occupied, rather
than investment properties.

e.     Co-conspirator Darryl Henry instructed co-
conspirator Elizabeth A. Hidalgo to create false documents such
as fake Forms W-2, pay stubs, bank statements, cancelled rent
checks and investment "statements," which were supplied to

mortgage brokers to support to the false information contained on the fraudulent loan application.

      f.   The Straw Purchasers or a designee attended the closing which was held at a title company such as Global Title, Group 21 Title Agency, Title Company of Jersey, Shore Title Agency, or Tri-State Title Agency.  There, defendants TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry directed title clerks, such as co-conspirator M.O., to prepare documents for the closings, including fraudulent HUD-1 Uniform Settlement Statements signed by the Straw Purchasers reflecting deposits and funds brought to closing by the Straw Purchasers that had never been provided by the Straw Purchasers.

      g.   Title clerks, such as co-conspirator M.O., distributed proceeds of the fraudulently obtained mortgage loan to the conspirators by wire transferring funds into accounts controlled by defendants TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry, or issuing checks deposited into accounts controlled by RICKS, N.T., and Henry, including accounts in the names of the co-conspirators' companies, EZ Go Financial Corporation, Oxford Funding Group, New Horizon Realty Group, and Elite Auto Spa.

      h.   Defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry then distributed a portion of

24

the proceeds to other members of the conspiracy for their respective roles in it.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2

### (Conspiracy To Commit Money Laundering)

1.    Paragraphs 1 through 7 and 9 through 29 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    From in or about October 2006 through on or about November 7, 2008, in the District of New Jersey and elsewhere, defendants

> TIMOTHY D. RICKS,
> KINARD J. HENSON,
> WILLIE W. RICHARDSON,
> ORLANDO ALLEN, and
> DWAYNE K. ONQUE

did knowingly conspire with each other, with co-conspirators N.T. and Darryl Henry, and others to engage in monetary transactions, namely, deposits, withdrawals, transfers and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, conspiracy to commit wire fraud and wire fraud, contrary to Title 18, United States Code, Section 1957.

3.    As part of the conspiracy, defendants TIMOTHY D. RICKS, KINARD J. HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, DWAYNE K. ONQUE, and their co-conspirators caused approximately $15 million dollars in fraudulent mortgage loans to be funded

during 2006, 2007, and 2008 to enable unqualified Straw Purchasers to purchase real estate properties. Once the funds for these mortgages were deposited into a title company's escrow account, defendants TIMOTHY D. RICKS, KINARD J. HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, DWAYNE K. ONQUE and their co-conspirators extracted proceeds from the fraud through wire transfers and checks to defendant TIMOTHY D. RICKS and co-conspirators N.T. and Darryl Henry. Defendant TIMOTHY D. RICKS and co-conspirator N.T., in turn, transmitted a portion of those proceeds to defendant DWAYNE K. ONQUE. Defendant TIMOTHY D. RICKS also, in turn, transmitted a portion of those proceeds to defendant ORLANDO ALLEN. In addition, Darryl Henry, in turn, transmitted a portion of those proceeds to defendants KINARD J. HENSON and WILLIE W. RICHARDSON.

4. As further part of the conspiracy, defendants TIMOTHY D. RICKS, KINARD J. HENSON, WILLIE W. RICHARDSON, ORLANDO ALLEN, and DWAYNE K. ONQUE and co-conspirator N.T. caused the following wire transfers or checks to be deposited for the following approximate amounts:

a. **Proceeds Associated with Sales of the Bahama Breezes Condominium**

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 07/02/2007 | Check | $184,000.00 | Oxford Funding Group |

b.   Proceeds Associated with the Dunes
     Condominium

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 05/08/2007 | Check | $138,143.00 | Oxford Funding Group |
| 05/17/2007 | Check | $168,143.00 | Oxford Funding Group |
| 05/29/2008 | Check | $168,143.00 | Oxford Funding Group |
| 06/15/2007 | Check | $182,891.00 | Oxford Funding Group |
| 06/22/2007 | Check | $168,143.00 | Oxford Funding Group |
| 07/03/2007 | Check | $168,143.00 | Oxford Funding Group |
| 08/06/2007 | Wire | $202,143.00 | Oxford Funding Group |

c.   Proceeds Associated with the Erin Shores
     Condominiums

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 02/12/2007 | Wire | $89,198.00 | Oxford Funding Group |
| 02/12/2007 | Wire | $71,364.01 | Oxford Funding Group |
| 06/07/2007 | Wire | $80,000.00 | New Horizon Realty Group |
| 07/24/2007 | Wire | $96,478.60 | New Horizon Realty Group |

d.   Proceeds Associated with the Surf Avenue
     Condominiums

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 01/30/2007 | Wire | $179,935.94 | Oxford Funding Group |
| 01/30/2007 | Wire | $118,971.43 | Oxford Funding Group |
| 04/02/2007 | Check | $107,097.51 | EZ Go Financial Corporation |

28

e.   Proceeds Associated with the Naples, Florida
     Properties

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 02/05/2008 | Wire | $119,070.00 | N.T. d/b/a Oxford Funding Group |
| 03/11/2008 | Wire | $135,267.00 | N.T. d/b/a Oxford Funding Group |
| 04/30/2008 | Wire | $143,862.00 | N.T. d/b/a Oxford Funding Group |
| 05/01/2008 | Wire | $132,957.00 | N.T. d/b/a Oxford Funding Group |

f.   Proceeds Associated with the Other New Jersey
     Properties

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 10/23/2006 | Check | $99,385.61 | Oxford Funding Group |
| 05/19/2008 | Wire | $21,145.18 | Timothy D. Ricks |

5.   As further part of the conspiracy, defendant
TIMOTHY D. RICKS, co-conspirators N.T. and Darryl Henry, and
others caused checks to be deposited and wire transfers to be
made from the proceeds associated with the sales of the
properties into bank accounts of the co-conspirators who
recruited the Straw Purchasers to purchase the properties and to
the Straw Purchasers.

29

In violation of Title 18, United States Code, Section
1956(h).

## COUNT 3

### (Attempted Murder Of A Witness)

1.      Paragraphs 1 though 7 and 9 through 29 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.      From in or about April 25, 2008 through in or about July 30, 2008, Federal law enforcement agents conducted an investigation into the sale of real estate properties where mortgage loans were obtained for unqualified buyers using fraudulent loan applications, HUD-1 Settlement Statements, and other documents.

3.      On or about July 30, 2008, Federal law enforcement agents in connection with the investigation served a grand jury subpoena on Mortgage Now which sought, among other things, documents in connection with L.B.'s purchases of real estate properties.

4.      That same day, shortly after the subpoena had been served on Mortgage Now, NANCY E. WOLF-FELS, an employee of Mortgage Now, discussed the subpoena with Darryl Henry.

5.      Darryl Henry then contacted defendant KINARD J. HENSON in Alabama and informed HENSON about the subpoena.

6.      On or about July 31, 2008, defendant KINARD J. HENSON contacted R.S. and indicated that HENSON needed L.B. killed.

31

7.   On or about July 31, 2008, defendant KINARD J. HENSON contacted L.B. and asked L.B. to help HENSON with some work.

8.   On or about July 31, 2008, defendant KINARD J. HENSON, L.B., and R.S. traveled to a wooded area in Mobile, Alabama where defendant KINARD J. HENSON provided R.S. a firearm and instructed R.S. to shoot L.B.

9.   On or about July 31, 2008, R.S. shot L.B. multiple times with defendant KINARD J. HENSON's firearm at HENSON's instruction.

10.   From on or about July 30, 2008 through on or about July 31, 2008, in the county of Ocean, in the District of New Jersey, and elsewhere, defendant

KINARD J. HENSON

did knowingly and intentionally aid, abet, counsel, and induce R.S. to kill another person, namely, L.B., with malice aforethought and with intent to prevent the attendance and testimony of L.B. in an official proceeding and prevent the production of a record, document, and other object in an official proceeding, which attempted killing is an attempt to commit murder as defined in Title 18, United States Code, Section 1113, in that such attempted killing was done unlawfully, willfully, deliberately, maliciously, and with premeditation.

In violation of Title 18, United States Code, Sections 1512(a)(1)(A) and (B) and (a)(3)(B)(i), and Title 18, United States Code, Section 2.

## FIRST FORFEITURE ALLEGATION

1. The United States hereby gives notice to defendant
TIMOTHY D. RICKS that, upon his conviction of the offense in
violation of Title 18, United States Code, Section 1956(h)
charged in Count 2 of this Indictment, the Government will seek
forfeiture in accordance with Title 18, United States Code,
Section 982(a)(1), of all property, real and personal, involved
in those offenses, and all property traceable thereto, including
but not limited to a sum of money equal to at least approximately
$2,185,799.75 in United States currency, representing the amount
of proceeds obtained as a result of the offense, for which the
defendant is jointly and severally liable.

2. If any of the above-described forfeitable property,
as a result of any act or omission of defendant TIMOTHY D. RICKS:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or
deposited with, a third party;

c.    has been placed beyond the jurisdiction of
the court;

d.    has been substantially diminished in value;
or

e.    has been commingled with other property
which cannot be divided without difficulty; it is the intent of

34

the United States, pursuant to Title 21, United States Code,
Section 853(p), as incorporated by Title 18, United States Code,
Section 982(b)(1), to seek forfeiture of any other property of
defendant TIMOTHY D. RICKS up to the value of the forfeitable
property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

## SECOND FORFEITURE ALLEGATION

1.   The United States hereby gives notice to defendant KINARD J. HENSON that, upon his conviction of the offense in violation of Title 18, United States Code, Sections 1956(h) charged in Count 2 of this Indictment, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property, real and personal, involved in those offenses, and all property traceable thereto, including but not limited to a sum of money equal to at least approximately $21,850.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses, for which the defendant is jointly and severally liable.

2.   If any of the above-described forfeitable property, as a result of any act or omission of defendant KINARD J. HENSON:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty; it is the intent of

36

the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant KINARD J. HENSON up to the value of the forfeitable property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

37

## THIRD FORFEITURE ALLEGATION

1.    The United States hereby gives notice to defendant
WILLIE W. RICHARDSON that, upon his conviction of the offense in
violation of Title 18, United States Code, Section 1956(h)
charged in Count 2 of this Indictment, the Government will seek
forfeiture in accordance with Title 18, United States Code,
Section 982(a)(1), of all property, real and personal, involved
in those offenses, and all property traceable thereto, including
but not limited to a sum of money equal to at least approximately
$138,000.00 in United States currency, representing the amount of
proceeds obtained as a result of the offense, for which the
defendant is jointly and severally liable.

2.    If any of the above-described forfeitable property,
as a result of any act or omission of defendant WILLIE W.
RICHARDSON:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or
deposited with, a third party;

c.    has been placed beyond the jurisdiction of
the court;

d.    has been substantially diminished in value;
or

38

e.    has been commingled with other property
which cannot be divided without difficulty; it is the intent of
the United States, pursuant to Title 21, United States Code,
Section 853(p), as incorporated by Title 18, United States Code,
Section 982(b)(1), to seek forfeiture of any other property of
defendant WILLIE W. RICHARDSON up to the value of the forfeitable
property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

## FOURTH FORFEITURE ALLEGATION

1.   The United States hereby gives notice to defendant ORLANDO ALLEN that, upon his conviction of the offense in violation of Title 18, United States Code, Section 1956(h) charged in Count 2 of this Indictment, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property, real and personal, involved in those offenses, and all property traceable thereto, including but not limited to a sum of money equal to at least approximately $101,800.00 in United States currency, representing the amount of proceeds obtained as a result of the offense, for which the defendant is jointly and severally liable.

2.   If any of the above-described forfeitable property, as a result of any act or omission of defendant ORLANDO ALLEN:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty; it is the intent of

40

the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant ORLANDO ALLEN up to the value of the forfeitable property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

41

## FIFTH FORFEITURE ALLEGATION

1.   The United States hereby gives notice to defendant LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," that, upon his conviction of the offense in violation of Title 18, United States Code, Section 1349 charged in Count 1 of this Indictment, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), of all property, real and personal, involved in those offenses, and all property traceable thereto, including but not limited to a sum of money equal to at least approximately $17,000.00  in United States currency, representing the amount of proceeds obtained as a result of the offense, for which the defendant is jointly and severally liable.

2.   If any of the above-described forfeitable property, as a result of any act or omission of defendant LARRY L. FULLENWIDER, a/k/a "Stanley Hyde":

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant LARRY L. FULLENWIDER, a/k/a "Stanley Hyde," up to the value of the forfeitable property described above.

      Pursuant to Title 18, United States Code, Section 982(a)(2).

## SIXTH FORFEITURE ALLEGATION

1.   The United States hereby gives notice to defendant
DWAYNE K. ONQUE that, upon his conviction of the offense in
violation of Title 18, United States Code, Section 1956(h)
charged in Count 2 of this Indictment, the Government will seek
forfeiture in accordance with Title 18, United States Code,
Section 982(a)(1), of all property, real and personal, involved
in those offenses, and all property traceable thereto, including
but not limited to a sum of money equal to at least approximately
$128,500.00 in United States currency, representing the amount of
proceeds obtained as a result of the offense, for which the
defendant is jointly and severally liable.

2.   If any of the above-described forfeitable property,
as a result of any act or omission of defendant DWAYNE K. ONQUE:

        a.    cannot be located upon the exercise of due
diligence;

        b.    has been transferred or sold to, or
deposited with, a third party;

        c.    has been placed beyond the jurisdiction of
the court;

        d.    has been substantially diminished in value;
or

        e.    has been commingled with other property
which cannot be divided without difficulty; it is the intent of

44

the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant DWAYNE K. ONQUE up to the value of the forfeitable property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
PAUL J. FISHMAN
UNITED STATES ATTORNEY

45

CASE NUMBER: __

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

TIMOTHY D. RICKS,
KINARD J. HENSON,
WILLIE W. RICHARDSON,
ORLANDO ALLEN,
SEAN A. SOUELS,
NANCY E. WOLF-FELS,
DEBORAH L. HANSON,
SETH A. FUSCELLARO,
ANGELA L. CELLI,
LARRY L. FULLENWIDER,
a/k/a "Stanley Hyde,"
and
DWAYNE K. ONQUE

# SUPERSEDING
# INDICTMENT FOR

Title 18, United States Code,
Sections 982(a)(1) and (2), 1349,
1512(a)(1)(A) and (B) and (a)(3)(B)(i) & 1956(h)

A True Bill,

Foreperson

PAUL J. FISHMAN
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

MATTHEW T. SMITH
*ASSISTANT U.S. ATTORNEY*
*(856) 757-5026*

USA-48AD 8
(Ed. 1/97)